IN THE
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| AMIEE ANNE CRIDER DEAN, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 7:18CV30 |
| SVC MANUFACTURING, INC., | ) |
| **Serve: CT Corporation System** | ) |
| **4701 Cox Road, Suite 285** | ) |
| **Glen Allen, VA 23060** | ) |
| **(Henrico County)** | ) |
| and | ) |
| PEPSICO, INC., | ) |
| **Serve: CT Corporation System** | ) |
| **4701 Cox Road, Suite 285** | ) |
| **Glen Allen, VA 23060** | ) |
| **(Henrico County)** | ) |
| Defendants. | ) |

## COMPLAINT

Plaintiff Amiee Anne Crider Dean, by counsel, moves for judgment against defendants SVC Manufacturing, Inc. and Pepsico, Inc. (collectively, hereinafter, Pepsico and "defendants"), jointly and severally, and as grounds therefore states as follows:

### STATEMENT OF THE CASE, JURISDICTION AND VENUE

(1) This is an action for declaratory, injunctive relief and monetary damages, and to address deprivation of rights secured by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§2000e, *et seq.* (hereinafter, "Title VII").

(2) The Court has jurisdiction over this action pursuant to 42 U.S.C. §2000e-5(f) and 28 U.S.C. §1343(a)(4).

(3)     The claims asserted in this action arose within the western district of Virginia in that the alleged discrimination and retaliation occurred in the western district of Virginia. Venue of this action is thus proper pursuant to 42 U.S.C. §§2000e, *et seq*.

(4)     Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission and the Virginia Council on Human Rights; received a notice of right to sue dated December 8, 2017; and commences this action within 90 days of receipt thereof.

(5)     Defendant SVC Manufacturing, Inc. is a corporation doing business in the western district of Virginia and elsewhere inside and outside the Commonwealth of Virginia.

(6)     Defendant Pepsico, Inc. is a corporation doing business in the western district of Virginia and elsewhere inside and outside the Commonwealth of Virginia.

(7)     SVC Manufacturing, Inc. is and was a "person" within the meaning of Title VII, Section 701, 42 U.S.C. §2000e(a). At all times material hereto SVC Manufacturing, Inc. was an "employer" within the meaning of Title VII, Section 701, 42 U.S.C. §2000e(b), that is, at all times material hereto SVC Manufacturing, Inc. was a person engaged in an industry affecting commerce which had 300 or more employees for each working day in each of twenty or more calendar weeks during the years of plaintiff's employment or the preceding calendar year.

(8)     Pepsico, Inc. is and was a "person" within the meaning of Title VII, Section 701, 42 U.S.C. §2000e(a). At all times material hereto Pepsico, Inc. was an "employer" within the meaning of Title VII, Section 701, 42 U.S.C. §2000e(b), that is, at all times material hereto Pepsico, Inc. was a person engaged in an industry affecting commerce which had 300 or more employees for each working day in each of twenty or more calendar weeks during the years of plaintiff's employment or the preceding calendar year.

(9) Plaintiff at all times material hereto is and was a resident of the Commonwealth of Virginia and was an "employee" of defendants SVC Manufacturing, Inc. and/or Pepsico, Inc. (plaintiff is not certain of the precise legal name of her employer).

## STATEMENT OF FACTS

(10) Plaintiff began working for Pepsico at a Gatorade production facility in Wytheville, Virginia in March 2016 (all dates are approximate) at an hourly rate of approximately $19.05.

(11) There, plaintiff has been touched inappropriately and otherwise subjected to a hostile and offensive work environment on account of her sex and retaliated against for complaining about the harassment to the point plaintiff's doctor removed her from work on medical leave for a period of time.

(12) For example, in November 2016, a male worker, Stacy Dalton, yanked plaintiff's pants down at work in front of her coworkers exposing her legs and underwear to the men at work. Plaintiff was humiliated.

(13) Dalton was put out of work, but plaintiff was later told that HR was talking about allowing him back to work even though many people went to HR and told them what had happened. Plaintiff was shocked that HR was considering putting him back to work.

(14) After that incident, the harassment worsened, and numerous male employees asked plaintiff about the color of her underwear, and so forth. This was humiliating for plaintiff and made it difficult for her to focus on her work.

(15) Next, emboldened by defendants' tepid response to the assault on plaintiff, a male supervisor, Willie Wheeler, began to touch plaintiff inappropriately and make sexual comments to her.

(16) For example, Wheeler approached plaintiff and put his hands on her shoulders and rubbed her shoulders. When plaintiff told him not to touch her and get away from her, he became extremely angry.

(17) On one occasion, plaintiff had to enter the store room to get towels. When Wheeler opened the cage to let her in, he kept her trapped in the cage and refused to let her out and told her that he would keep her locked in there so she could be his little personal assistant for the rest of the night.

(18) On another occasion when plaintiff hurt her back at work, Wheeler went to the med room and got some heat gel and asked if he could rub the gel on plaintiff's body.

(19) Continuing, when plaintiff asked to be moved off the labelers because she hurt her back there, Wheeler told her that he would talk to Jason to see what could be done then asked plaintiff "what she was going to do for him in exchange" or words to that effect.

(20) Wheeler also talked about how good plaintiff's "ass" looked.

(21) On another occasion, Wheeler told plaintiff that his wife and kids were going out of town on vacation and asked her to come over to his house and "sleep" with him.

(22) Plaintiff complained about the sexual harassment to Pepsico.

(23) After plaintiff complained about the harassment, she was written up by Pepsico for something she did not do.

(24) Things only got worse at work after plaintiff complained to human resources. HR told plaintiff that Wheeler was coming back to work and that she should just ignore what he said to her.

(25) After HR did nothing, plaintiff asked to speak to defendants' CEO.

(26)     After asking to speak to the CEO, HR told plaintiff that they had seven different men come to them with the exact same story that plaintiff had been on the floor making sexual remarks to them.  HR also told plaintiff that they knew that she had been on the floor showing them her new thongs, and that she was offering sexual favors to men at work.  HR also told plaintiff that the seven men had told them that she was out on the floor talking about her sex life and how much she loves sex and had to have it and so forth.   Plaintiff never did any of these things but felt like dirt the way HR talked to her.  All the while, HR just sat there smiling.  HR also told plaintiff that they were going to let Wheeler come back to work.

(27)     Thus instead of stopping the harassment at work, HR made things worse and fostered a hostile work environment.

(28)     On information and belief, HR encouraged people to make false statements against plaintiff concerning the above-referenced matters.

(29)      As a result of the harassment and retaliation, plaintiff experienced severe anxiety, depression and panic attacks, and her doctor removed her work on medical leave in July 2017.

(30)     Plaintiff recently returned to work from medical leave.  HR, though, put her on second shift, working 3pm to 11pm, 13 days on then 1 day off knowing full well that doing so would mean that plaintiff — a mother with three young children — would rarely see her children.  Thus, defendant punished plaintiff for complaining about the harassment and hostile work environment and fostered and created a work environment that is hostile to plaintiff and other women at work.

(31)     Plaintiff also contracted pneumonia and was hospitalized on December 11 and 12, 2017. After being discharged from the hospital, plaintiff provided HR with her hospital note and doctor's note.  HR informed plaintiff that they "don't accept those [doctor's notes]" and told

plaintiff unless she returned to work she would be assessed points and her employment would be terminated.

(32) Even after plaintiff's repeated complaints and the fact that plaintiff filed a charge of discrimination with the EEOC, the sexual harassment and hostile environment at work continues. Since the time plaintiff returned to work, for example, male coworkers continue to sexually harass plaintiff and say things like, "what color are your underwear today?" and "are they purple like when Stacy jerked your pants down?," or words to that effect.

(33) Thus, whatever remedial action defendants have taken to stop the harassment, if any, has been wholly ineffective, and the work environment continues to be hostile to plaintiff and other women.

(34) Plaintiff has reported this continued harassment to HR, but nothing effective has been done. Instead, HR has told plaintiff that the employees are "just joking."

(35) HR has also supported mistreatment of other women by men at Pepsico. For example, when Scott Delby assaulted and battered Ashley Alley, HR stated that everybody should be able to keep their job regardless of what they do, so defendants permitted Scott Delby to return to work and is still working there but terminated the employment of Ashley Alley.

**COUNT I: TITLE VII CLAIM FOR SEX DISCRIMINATION AND HARASSMENT**

(36) Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

(37) Defendants had a duty to maintain a work environment free of sex discrimination and harassment.

(38) Defendants' action and inaction created a hostile an offensive work environment and interfered with plaintiff's ability to work and earn a living.

(39) Defendants knew or should have known of the hostile work environment and failed to take prompt remedial action reasonably calculated to end the harassment and hostile work environment.

(40) Defendants further violated federal law by failing to take action reasonably calculated to prevent sex discrimination and harassment and by permitting a work environment to exist that was hostile and offensive to plaintiff and other female employees.

(41) As a direct and proximate result of defendants' actions, plaintiff has suffered and will continue to suffer loss of employment, pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary loss.

(42) At all times material hereto, defendants engaged in a discriminatory practice or practices with malice or reckless indifference to the federally protected rights of plaintiff so as to support an award of compensatory and punitive damages.

(43) The above-described acts of defendants constitute sex harassment and discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e, *et. seq.*

## COUNT II: TITLE VII CLAIM FOR RETALIATION

(44) Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

(45) Defendants discriminated and retaliated against plaintiff in violation of federal law in that defendants harassed and retaliated against plaintiff and wrote plaintiff up for complaining about the harassment and hostile work environment in violation of Title VII of the Civil Rights Act of 1964, as amended.

(46) As a result of defendants' retaliatory and discriminatory acts, plaintiff has suffered and will continue to suffer pecuniary loss, mental anguish, pain and suffering, shame, humiliation, embarrassment, loss of enjoyment of life and other non-pecuniary loss.

(47) Defendants acted willfully toward plaintiff with actual malice or with reckless disregard of the protected rights of plaintiff so as to support an award of liquidated and exemplary damages.

WHEREFORE, plaintiff Amiee Anne Crider Dean demands judgment against defendants SVC Manufacturing, Inc. and Pepsico, Inc., and each of them, jointly and severally, for injunctive and equitable relief, compensatory and punitive damages, together with pre-judgment interest and for costs and attorney's fees to the extent recoverable by law, and for such other and further relief as may be just and equitable.

Trial by jury is demanded on all issues on which plaintiff is entitled to trial by jury, including any question concerning arbitrability.

Respectfully Submitted,

AMIEE ANNE CRIDER DEAN

By: */s/ Terry N. Grimes*
     Of Counsel

Terry N. Grimes, Esquire (VSB No. 24127)
Brittany M. Haddox, Esquire (VSB No. 86416)
GRIMES & HADDOX, P.C.
320 Elm Avenue, SW
Roanoke, Virginia 24016-4001
(540) 982-3711
(540) 345-6572 *Facsimile*
tgrimes@terryngrimes.com
bhaddox@terryngrimes.com
    *Counsel for Plaintiff*